*807 On the Merits.
Plaintiff instituted foreclosure proceedings on 25 notes of $100 each, maturing monthly, and secured by chattel mortgage and vendor’s lien upon certain household furniture and fixtures, sold by Mrs. James A. Cardenas and husband to the defendant, Buchanan, as per act of sale and mortgage, certified copy of which was annexed and made part of the petition. Thereupon Buchanan obtained a temporary writ of injunction, restraining the sale, upon the following allegations:
That the notes and mortgage are null and void for the reasons assigned and facts alleged in . the suit of this defendant filed against the said Mrs. J. A. Cardenas, No. 127,438, on the docket of the civil district court for the parish of Orleans, which was annexed and made part of the petition for injunction as fully as if copied therein in extenso; that petitioner . (plaintiff in injunction herein) on March 10, 1919, entered into negotiations with the said Mrs. Cardenas for the purchase of a certain rooming house business at 843 St. Charles street, in the city of New Orleans, including “all of the contents, furniture, effects and articles of every kind, situated in the said premises and also to include the right of occupancy or assumption of lease of said premises for the term of the lease then held by the said Mrs. Cardenas, which she represented to petitioner would end on the 30th day of September, 1920, and the right to sublease and occupy an addition to said rooming house which she represented was about to be constructed in the rear of said premises”; that petitioner desired to lease a rooming house containing not less than 30 rooms; that although the said premises contained only 16 rooms at the time, the said Mrs. Cardenas represented that the owner was about to construct in the rear of said premises a three-story addition, with certain accessories, and exhibited to petitioner blueprint plans and specifications, showing that there would be added 18 more rooms, garage, etc., and that the same would be constructed at once; that said Mrs. Cardenas further represented that she had an agreement with the owner by which the contemplated improvements would be leased to her for an additional rental of $100' per month, and that both the old and new premises could then be leased by her so long as she desired; that the said Mrs. Cardenas further represented that the said lease also covered a large lawn, and pointed the same out as an inducement to petitioner to buy the business; that, acting upon said representations, petitioner entered into a verbal agreement with her to purchase the said business for the sum of $6,000, of which amount $3,500 was to be paid in cash, and the balance at the rate of $100 per month; that on the 25th day of March, 1919, petitioner was informed by the said Mrs. Cardenas that there would be a slight delay in starting the construction of the said addition, but that it was only temporary, and guaranteed that said building would be constructed and ready for occupancy not later than- October 1, 1919; that after further negotiations, in view of this delay, the price of the business was reduced $500, but with the continued guaranty that the • building would be ready by October 1st, and that thereupon petitioner accepted the amended terms of said proposal, agreeing to pay for the contents of said building, including the transfer of said lease, the sum of $5,500, on the identical terms above mentioned, and accordingly a notarial contract of sale was entered into; that although said act of sale conveys “all of the. contents, furniture, effects and articles of every kind situated in the premises No. 843 St. Charles street, with the exception of such articles as the said vendor desired to retain,” and the said Mrs. Cardenas had previously selected all of the furniture that she was to retain, *809 petitioner subsequently discovered tbat eight of tbe large mirrors contained in said house were not Mrs. Oardenas’ property; tbat petitioner assumed and obligated himself upon tbe lease expiring on September 30, 1920, but tbat through error tbe figures 1919 were inserted in tbe act of sale; tbat thereafter petitioner sought to obtain a copy of said lease, but tbat through various subterfuges tbe said Mrs. Cardenas failed and refused to furnish it to petitioner; that she represented that she bad tbe right to transfer tbe same, but tbat petitioner was informed by tbe owner, on May 26,1919, after having taken possession on April 16th preceding (tbe sale having been consummated on April 11th) that tbe said Mrs. Cardenas bad no right to make said assignment of tbe lease, and tbat tbe mirrors belonged to the premises, and that he bad not promised or obligated bimself in any manner to construct said addition; tbat be (tbe owner) bad no present intention of doing so, tbat tbe lawn was not covered by said lease, and tbat said information was, on May 27, 1919, confirmed by written notice to petitioner to tbat effect; tbat petitioner entered into said contract on April 11, 1919, laboring under an error of fact as to tbe principal cause thereof, produced by the fraud and misrepresentations of tbe said Mrs. Cardenas, and that petitioner is entitled to have tbe same annulled, and to recover the $3,000 paid in cash; and tbat petitioner has offered to return tbe furniture and effects.
In tbe alternative, petitioner alleges tbat tbe purported act of mortgage is null and void, for the reason tbat no property is described therein; that some of tbe furniture did not belong to the said Mrs. Cardenas, and tbat other portions bad been placed therein subsequent to tbe signing of said mortgage.
Petitioner further alleges tbat tbe plaintiff in execution, Mrs. Peter E. Durel, is not the owner of said notes; that the alleged transfer to her is simulated, made without consideration, and in furtherance of a conspiracy with tbe said Mrs. Cardenas, her sister, to defraud petitioner. Further, in tbe alternative, that tbe consideration for said notes has entirely failed.
Tbe petition for injunction makes Mrs. Cardenas a party defendant, prays tbat the injunction be perpetuated, and tbat tbe notes be annulled and returned to petitioner.
Plaintiff, Mrs. Durel, and Mrs. Cardenas, her sister, filed a joint answer, denying seriatim! tbe allegations of tbe petition for injunction; but “respondents admit signing tbe notarial act of sale on April 11, 1919, before A. D. Danziger, notary, and rely upon same.”
Tbe trial below resulted in a judgment in favor of the defendants in injunction, and dismissing tbe application at tbe cost of Buchanan, and be has appealed.
In the beginning of tbe trial in tbe lower court, counsel for Mrs. Durel, plaintiff in execution, offered in evidence tbe notarial act of sale and mortgage, together with tbe 25 notes sued on. He then called Mrs. Cardenas, tbe vendor, to the stand, and commenced interrogating her about the circumstances and conditions prior to and leading up to tbe sale of tbe rooming bouse business, and, after pursuing this course to tbe extent of a few questions, counsel for Buchanan, defendant in execution, plaintiff in injunction, interposed tbe following:
“By Mr. Brian: I have no objection to the question itself, but it looks like counsel is not proceeding in order. He is putting in rebuttal testimony before the main demand.”
Thereupon counsel for Mrs. Durel abandoned that line of examination of the witness, and confined bis inquiry to tbe transfer, consideration, etc., of tbe notes to bis said client.
•Counsel for Buchanan then took tbe witness on cross-examination, and after quizzing *811 her for a short while about the transfer of the notes, propounded the following question:
“Q. Now, when you got these notes from Mr. Buchanan, what understanding, if any, did you have with him as to where he could pay the .notes?
“By Mr. Danziger: I realize that, inasmuch as these allegations have been made of fraud and misrepresentation, that your honor is going to let all of the evidence in, but, in order to be able hereafter to have the record built up in proper' shape, I want to offer a general objection to any evidence which tends to vary, add to, contradict or alter the written act of sale of date April 11, 1919, on the ground that parol evidence is not admissible to vary or alter, as I say, a notarial act. Whatever went before or since, by way of parol, is inadmissible; and I ask that the understanding be made that this objection goes to all testimony along the same line, without the necessity of repetition. Your honor will rule, I suppose — ,
“By the Court: Yes; I overrule the objection.”
Two of three additional questions were asked along the same line, and then appears this by Mr. Danziger:
“By Mr. Danziger: There is one other objection I want to make, and that is, to any testimony as to any alleged defects or equities existing as between the original parties, Mrs. Cardenas and Mr. Buchanan, on the ground that this suit is brought by Mrs. Durel, a third person, and until it be shown that she had knowledge of those, equities or until the act itself is defeated, that any equities which may have existed between the original parties cannot be urged as against this third person bringing the suit, the suit being on negotiable instruments.”
“By the Court: I think if Mrs. Durel were aware of the equities, the evidence probably would be admissible.”
Some six pages of the record is then consumed by the cross-examination on the matter of the transfer of the notes to Mrs. Durel, as to the date thereof, the ability of Mrs. Durel to purchase, manner of payment, etc., and on page 55 of the transcript the question of the fraud and misrepresentation charged as against Mrs. Cardenas is taken up and continued to and including page 69, and in which practically all of the allegations of the petition for injunction are covered.
This all took place on November 12, 1919, the first day of the trial. The case was continued by preference, and on November 26th was resumed, with the same witness,
Mrs. Cardenas, on the stand for further cross-examination. About a page of the record was consumed along the same line as before, that is, as to the fraud and misrepresentation of the witness, and then the following objection was made:
“By Mr. Danziger: Now, if your honor please, I want to renew the objection that I made before, particularly the objection that this being a suit on negotiable notes in the hands of Mrs. Durel; who, as alleged and the testimony has shown, acquired these notes and is the holder thereof, that any evidence as to equities between the parties, if any there were, to the original transaction, either Mrs. Cardenas as the original seller, or Mr. Buchanan as the original purchaser, is inadmissible under the negotiable instruments law. (Argument by counsel.)
“By the Court: I think that contention is correct. If you are going to attack this proceeding on the theory that Mrs. Durel is not the holder in good faith, you must show that first.”
Thereafter no further evidence was permitted to be received on the question of the fraud and misrepresentation, and the balance of thp note of evidence, consisting of some 52 pages, is devoted to the question of the bona lides of the alleged transfer of the notes and the good faith of Mrs. Durel. But before the testimony was closed, and at the end thereof, the following appears:
“By Mr. Brian: I want to make a reservation that I don’t consent to the present status of the case. I want to reserve my right to this effect that, if I had been permitted to go ahead and introduce my proof as outlined, I could have proved úp both branches of the case.
“By the Court: According to my theory, there is only one branch of the case before me; I don’t understand that the other branch of the case is before me at all.” •
*813 There were no written reasons for the judgment, but the lower court evidently concluded that Mrs. Durel had acquired the notes in good faith and for a valuable consideration.
[2] We think that it was the intention of the Legislature, in passing Act No. 198 of 1918, to place the holders of notes secured by chattel mortgage executed in compliance with said law upon practically the same footing as the holders of notes secured by mortgage upon real property; that is, when the holder is in good faith, without knowledge of any secret equities not disclosed by the record, and for a valuable consideration, he is not affected by any such claims as between the original parties. But, in order to insure that right, the act by which the chattel mortgage purports to be given should reasonably and clearly conform to the law under which it is given.
[3] All mortgages are stricti juris, and can only exist in the cases provided by law, as will be seen from the following article of the Revised Civil Code:
“Art. 3283. Mortgage is Stricti Juris.—The mortgage only takes place in such instances as are authorized by law.”
And they must describe the property:
“Art. 3306. Description of Mortgaged Property.—To render a conventional mortgage valid, it is necessary that the act establishing it shall state precisely the nature and situation of each of the immovables on which the mortgage is granted.”
In addition to these general principles, the chattel mortgage law (Act 198 of 1918) provides as follows:
“Section 2. Be it further enacted, etc., That every such mortgage of property mentioned in section 1 shall be in writing, setting out a full description of said property to be mortgaged, so that same may be identified, and also stating definitely the time when the obligation shall mature. * *
The only description of the property attempted to be mortgaged in this case, is as follows:
“All of the contents, furniture, effects and articles of every kind situated in the premises No. 843 St. Charles street, with the exception of such articles as the said vendor desires to retain.”
[4] It will be seen that there is nothing in this description by which any part of the property may be identified, and the uncertainty is made more uncertain still by the exception which allows the vendor to retain such articles as she may see fit. Even as between the original parties, it would not have been possible for the court to enforce the contract without some information dehors the document itself as to just what was retained or intended to be retained by Mrs. Cardenas. And again, it developed, as might have been expected, that some of the things which the vendee thought were included were not so included, and he is now claiming that the plaintiff in execution has seized property placed in the premises by him since the sale and mortgage. The purpose of the law in requiring a clear description of the movable property to be mortgaged is manifest, i. e., to avoid controversy as to its identity in just such cases as we have here; and, under the rule stricti juris of the Code, and that “to render a conventional mortgaged valid, it is necessary that the act establishing it shall state precisely the nature and situation” of the property, we do not think that the description in the chattel mortgage under considerations meets the legal requirements necessary to permit a proceeding via executiva.
[5, 6] In the present case, the plaintiff is not seeking any personal judgment upon the notes, and our inquiry must necessarily be directed to her rights under the mortgage, except to the extent that if the mortgage were *815 otherwise valid and enforceable, it would be pertinent and permissible, under the allegations of the petition for injunction, to determine the bona fife of her possession and the good faith in acquiring the notes as a condition precedent to entitle her (o enforce the collateral right of mortgage. In other words, we think it was necessary, first, to determine the validity of the mortgage, and that this must be done upon the face of the record. When this had been done, if it were found valid, then the question of plaintiff’s good faith would become pertinent, and her rights would depend upon the extent of her knowledge of the latent equities, or upon such as were reasonably disclosed or suggested by the mortgage records. In the absence of actual knowledge of any fraud or misrepresentation not appearing upon or suggested by the mortgage itself, we do not think that she could have been affected thereby. However, wé think the better practice would be, in cases like the present, when fraud and conspiracy are imputed, not alone to the mortgagee, but also to the transferee of the mortgage notes proceeding by executory process, to permit the introduction of evidence on all point's, to the end that, if the appellate court should not agree with the trial judge in his conclusions on the one issue, the matter might be speedily disposed of otherwise, without the necessity for remanding the case.
[7] Since it is clear that the plaintiff, Mrs. Durel, was not, for the reasons which we have mentioned, entitled to executory process, the injunction should have been maintained. Hackemuller v. Figueroa, 125 La. 307, 51 South. 207.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled and reversed, and it is now ordered that the 'writ of injunction be, and the same is hereby, perpetuated; plaintiff in execution, defendant in injunction, to pay all costs.